Elizabeth J. Cabraser (State Bar No. 083151)
Morris A. Ratner (State Bar No. 157554)
Eve H. Cervantez (State Bar No. 164709)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Sid Wolinsky (State Bar No. 33716)
Melissa W. Kasnitz (State Bar No. 162679)
Rhoda Benedetti (State Bar No. 192606)
DISABILITY RIGHTS ADVOCATES
449 15th Street, Suite 303
Oakland, CA 94612
Telephone: (510) 451-8644
Facsimile: (510) 451-8511

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULEUS CHAPMAN, et al.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPT. OF EDUCATION, et al.,<br><br>　　　　　Defendants. | Case No. C 01-01780 CRB (EMC)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF NINTH CIRCUIT APPEAL**<br><br>Date:　　　July 31, 2002<br>Time:　　　10:30 a.m.<br>Courtroom:　C, 15th Floor<br>Judge:　　　Hon. Edward M. Chen |

135732.1

PLTFS' OPPOSITION TO DEFS' MOTION TO STAY DISCOVERY
PENDING RESOLUTION OF NINTH CIRCUIT APPEAL
CASE NO. 01-01780 CRB (EMC)

## I. INTRODUCTION

This lawsuit challenges Defendants' failure to insure that students with disabilities can access the newly implemented California High School Exit Exam ("CAHSEE" or "Exam"), passage of which is required for receipt of a high school diploma beginning with the class of 2004. As specifically related to this motion, Plaintiff's First Amended Complaint alleges that the California Department of Education, the Superintendent of Public Instruction, and the State Board of Education (collectively "Defendants" or "the State") violate federal law by failing to allow students with disabilities to use the reasonable accommodations necessary for them to access the Exam, and/or by refusing to confer a high school diploma on students with disabilities who use certain prohibited accommodations, termed "modifications" by Defendants. First Amended Complaint ¶¶ 98-127.[1]

On May 29, 2002, Plaintiffs learned for the first time that Defendants had radically altered their accommodations policy, and had re-designated two common accommodations as "modifications," use of which would invalidate a student's test score and preclude receipt of a high school diploma. This drastic shift in the State's accommodation/modification policy has serious and immediate repercussions for students with disabilities – it puts them in a much worse position than they were in before the preliminary injunction order issued – and dramatically changes the accommodations policy which Defendants presented to both the trial court and the Ninth Circuit. Accordingly, Plaintiffs immediately requested limited discovery in the form of a single deposition about Defendants' policy change. Defendants repeatedly refused to even inform Plaintiffs whether or not they would respond to the discovery. They then stalled as long as they could before filing this motion on July 18, five full weeks from the time they received notice of the deposition and just eleven days before the scheduled deposition. The requested deposition is certainly not burdensome; the defendants have spent more time engaging in filibuster meet-and-confer activity, and in preparing this inappropriate stay motion, than they would have spent by

---

[1] The Court issued an order certifying the plaintiff class on January 16, 2002, and granting (in part) class plaintiffs' motion for preliminary injunction on February 21, 2002. Defendants have appealed. No stay has been entered.

timely producing the witness for deposition. Defendants are taking the position that they can change (using some unknown, internal, non-public process) the policy as they represented that policy to Judge Breyer, to the Ninth Circuit, and to disabled children, and that Plaintiffs (and therefore the Court) are not entitled to find out anything about it.

Defendants have not met their burden to demonstrate good cause for a stay of discovery pending resolution of their interlocutory appeal to the Ninth Circuit. First, as a matter of law the district court is not divested of jurisdiction pending appeal of a preliminary injunction order. *Phelan v. Taitano*, 233 F.2d 117, 119 (9th Cir. 1956). Were the rule otherwise, any litigant could halt all discovery for an indeterminate time by filing a frivolous appeal. Defendants must know that the district court retains jurisdiction here—they continue to appear in court for status conferences and settlement conferences, and insist that Plaintiffs obey a recent order made by Judge Breyer. Second, Plaintiffs were not required to seek leave of Court pursuant to Fed.R.Civ.P. 27(b) before noticing the deposition at issue here, because Rule 27(b) applies only to cases in which a judgment has been entered. Finally, Defendants present no other justification for staying discovery pending interlocutory appeal. Their argument that the Ninth Circuit's decision may determine the outcome of the entire case is no different than an argument that any pending motion or interlocutory appeal could dispose of a case, and is no justification for staying discovery in the meantime. In effect, Defendants are asking this Court to second-guess Judge Breyer, and to stay discovery on the grounds that the Ninth Circuit will likely reverse Judge Breyer's ruling. This does not constitute good cause for staying discovery.

In contrast, Plaintiffs have an immediate need for the discovery they presently seek. As discussed below, Plaintiffs need the discovery (1) to protect the class; (2) to make informed decisions about what accommodations/modifications individual children will use when taking the CAHSEE; (3) to insure that the Ninth Circuit is informed of the true state of Defendants' accommodation policy; and (4) if warranted, to move for further preliminary relief prior to the September 17-19, 2002 administration of the Exam. Additionally, while Plaintiffs have been willing, in the interests of compromise, to delay substantial discovery until after the Ninth Circuit rules on Defendants' interlocutory appeal, Plaintiffs cannot forgo all discovery,

because they have a continuing need and responsibility to monitor Defendants' implementation of the CAHSEE and the Court's Preliminary Injunction Order. Given Defendants' recent about-face on the accommodations/modifications policy, Plaintiffs' requested deposition is needed to monitor compliance with the Court's Preliminary Injunction Order, to learn whether Defendants' representations to the trial and appellate courts are accurate, and to prepare both for settlement negotiations and for a trial on the merits.

Accordingly, Defendants' motion should be denied in its entirety. Additionally, Plaintiffs request that this Court order Defendants to produce a deponent and the requested documents on August 7 or 8, 2002.[2]

## II. FACTUAL BACKGROUND

### A. The Court Issues Its Preliminary Injunction Order

Plaintiffs filed their complaint on May 8, 2001, and filed a first amended complaint on December 10, 2001. On January 16, 2002, the Court certified a class consisting of all students eligible for an IEP or Section 504 Plan who have taken or will be required to take the CAHSEE. On February 21, 2002, the Court issued a preliminary injunction. Declaration of Teresa Stinson ("Stinson Decl.") Ex. 1. As part of the preliminary injunction order, the Court found that Plaintiffs had standing to bring the present action, and that the action was ripe because students' rights are violated, and harm is suffered, each time they are not meaningfully included in the Exam (which has now been administered at least four times). Preliminary Injunction Order at 3-4. The Court also held that Plaintiffs were not required to exhaust administrative remedies

---

[2] This is the second time the Attorney General's office has used these stalling tactics, and this Court has already warned Defendants concerning their conduct:

> Although provided with reasonable notice of deposition dates as required by Federal Rule of Civil Procedure 30(b), Defendants refused to produced Eastin and Nunez for deposition and declined to seek a protective order from this Court pursuant to Rule 26(c). Accordingly, Defendants risk sanctions under Rule 37 including any objections to the deposition being deemed waived. *See First Sav. Bank v. First Bank System, Inc.*, 902 F.Supp. 1356 (D. Kan. 1995).

Order of Magistrate Judge Edward M. Chen, January 4, 2002.

under IDEA because they were challenging Defendants' general policies. Preliminary Injunction Order at 5. The Court ordered Defendants to develop an alternate assessment to the CAHSEE forthwith, and also ordered that Plaintiffs be permitted to use on the CAHSEE any accommodation or modification set forth in their IEP or Section 504 Plans. The Order did not address the ultimate use of CAHSEE results in the decision to grant or deny a diploma. Preliminary Injunction Order at 12-13.

On March 19, 2002, Defendants filed an interlocutory appeal of the Court's Preliminary Injunction Order. Briefing and oral argument were scheduled on an expedited basis, pursuant to Ninth Circuit Rule 3-1, and on June 21, the Court set oral argument for August 14, 2002. Declaration of Sid Wolinsky ("Wolinsky Decl.") ¶ 2. However, there is no court rule requiring the panel to issue its opinion on an expedited basis. There is certainly no guarantee that the Ninth Circuit will issue its ruling prior to the September 17-19, 2002 Exam administration.

### B. Plaintiffs Compromise on Discovery

This case involves an ongoing threat by Defendants to the futures of tens of thousands of disabled children who are subject again to a high stakes exam in September. Over 90% failed the last test administration. Because the Preliminary Injunction did not grant Plaintiffs all the relief that they seek, and because Plaintiffs must still prevail on summary judgment or at trial in order to obtain permanent relief, Plaintiffs have continued to seek limited and targeted discovery. Defendants have resisted, contending that discovery should be stayed during the pendency of their appeal. Although Plaintiffs disagreed with this position, Plaintiffs compromised and agreed to defer a substantial subset of outstanding discovery for the time being.[3]

---

[3] Plaintiffs disagree with Defendants' characterization of the parties' disputes, agreements, and disagreements regarding this discovery, as set forth in Defendants' MPA at 3-5, in the Declaration of Douglas Press, ¶¶ 2-5, and in the Declaration of Teresa Stinson, ¶¶ 3-6. Because these disputes are not relevant for purposes of this motion, Plaintiffs will not set forth all of the inaccuracies in Defendants' account here. Suffice it to say that the sole deposition at issue here was noticed after Defendants' briefs were due and filed. Plaintiffs also affirmatively state that they have never served discovery to prevent Defendants' counsel from having sufficient time to brief or respond to any pending matter. Wolinsky Decl. ¶ 3. Plaintiffs agreed to delay some discovery in the spirit of compromise, and not because they accepted Defendants' position that discovery should be stayed pending appeal. Wolinsky Decl. ¶ 4.

135732.1 - 4 -

PLTFS' OPPOSITION TO DEFS' MOTION TO STAY DISCOVERY
PENDING RESOLUTION OF NINTH CIRCUIT APPEAL
CASE NO. 01-01780 CRB (EMC)

### C. Plaintiffs Learn That Defendants Have Changed the Rules of the Game

On May 29, 2002, Plaintiffs discovered for the first time that Defendants had, in secret and without resort to the regulatory process, made a drastic change to their accommodations policy, with very negative consequences for disabled children. *The new policy added two entirely new and very broad categories of "prohibited" modifications, use of which would invalidate students' test scores*: "For responding to writing items, the use of a transcriber, mechanical or electronic transcribing devices, and spell check devices/software." Wolinsky Decl. Ex. A.[4] The revised policy represents a sweeping expansion of the Defendants' flawed modifications policy, now encompassing in its breadth the most common reasonable accommodations used by disabled students and found to be necessary by their IEP teams. As a result, the overwhelming majority of class members will need to use a now-prohibited "modification" on the CAHSEE, thereby invalidating their scores and placing them in jeopardy of not graduating from high school.

Moreover, this abrupt, unexplained, and secret change of policy has serious due process implications. The new policy is contrary to earlier directives which explicitly *permitted* the use of transcribers, and stated that the only "modifications" were calculators and the use of readers. Wolinsky Decl. Ex. A. Indeed, as it now stands the formal regulations directly contradict this new directive of the Department of Education. The regulations specifically state that "allowable accommodations" include "responses made with mechanical or electronic assistance as long as the mechanical or electronic device is used solely to record the pupil's or adult student's responses." 5 Cal. Code Regs. § 1217(b)(2)(A)(Stinson Decl. Ex. 4).

Thus, students and parents are placed in an untenable position: Should they use

---

[4] Defendants contend that this change was made much earlier. However, the "evidence" they cite consists of a handful of individual letters to individual school districts, not policy statements disseminated to all school districts. Stinson Decl. Ex. 5. As far as Plaintiffs are aware (without the benefit of any discovery on the topic), official notice of this change in policy was not sent to Districts until April 2002. As set forth in Plaintiffs' Supplemental Status Conference Statement, Plaintiffs did not learn of this change in policy until May 29, 2002. Wolinsky Decl. Ex. A. Defendants certainly never directly disclosed the policy change to Plaintiffs or the Court, despite certification of the plaintiff class and the pendency of an order granting preliminary injunctive relief.

1  accommodations on the CAHSEE that have been recommended by their IEP teams and which
2  they have used for years, in reliance on the formally promulgated regulations, or should they not
3  use these accommodations (and risk failing the Exam) because a new Departmental policy
4  purports to invalidate the scores of students using these accommodations?

5  Plaintiffs immediately brought Defendants' change in policy to the Court's
6  attention in a Supplemental Status Conference Statement, and at a June 7 Status Conference.
7  Wolinsky Decl. ¶ 6, Ex. A. The Court indicated that, if Plaintiffs felt this change was causing
8  irreparable injury to class members, then Plaintiffs should bring a formal motion seeking relief.
9  Wolinsky Decl. ¶ 6.[5]

### D. Plaintiffs Request Discovery on Defendants' Policy Change

On June 12, 2002, Plaintiffs issued a narrow 30(b)(6) deposition notice focused on the Department of Education's new designation of transcribers and spell-checkers as "modifications." Declaration of Douglas Press ("Press Decl."), Ex. 2. The deposition was set more than one month out, on July 17, 2002. Also on June 12, Plaintiffs sent a letter to Defendants asking whether, given Defendants' previous statement that no discovery should take place during the pendency of the interlocutory appeal, Defendants would produce a deponent, make a motion themselves, or refuse to appear and require Plaintiffs to move to compel. Wolinsky Decl. Ex. C. Defendants responded with a letter on June 18 which refused to state whether or not they would produce a witness, and instead stated that "We have forwarded your Deposition Notice to our clients and will get back to you during the first week of July so that we can meet and confer about whether a deposition should proceed on the date you noticed, on another date, or at all." Wolinsky Decl. Ex. D. On June 19, 2002, Plaintiffs wrote to Defendants yet again, asking whether or not Defendants were willing to go forward with the deposition, and asking for a response by June 25. Wolinsky Decl. Ex. E. On June 25, Defendants stalled again, and

---

[5] Counsel for Defendants appeared at the regularly scheduled June 7 Status Conference before Judge Breyer. At that Status Conference, the Court requested that Plaintiffs provide Defendants with the names of 100 students who needed alternate assessments. Wolinsky Decl. ¶ 7. Since the Status Conference, Defendants have sent three separate letters to Plaintiffs, demanding that they obey the Court's order in this respect. Wolinsky Decl. Ex. B. Defendants' position obviously undermines their request for a stay here. Apparently, they believe that only Defendants, but not Plaintiffs, are entitled to further discovery.

1 responded by stating that they wanted to put off until July 2 or 3 any discussion of the nature and

2 timing of the proposed deposition. This letter refused to state whether or not Defendants would

3 produce a witness. Wolinsky Decl. Ex. F. On June 26, Plaintiffs once again requested that

4 Defendants give them a straight answer to a simple question—would they or would they not

5 produce a deponent in response to the June 12, 2002 deposition notice. Wolinsky Decl. Ex. G.

6 On July 2, 2002, counsel for the parties met and conferred by telephone. Wolinsky

7 Decl. ¶ 14. At that time, Defendants finally stated that they would not produce a witness for the

8 deposition noticed for July 17, but would instead seek a protective order or stay. Wolinsky Decl.

9 ¶ 14. In order to give Defendants sufficient time to file their motion, Plaintiffs agreed to continue

10 the deposition from July 17 to July 29, 2002. Wolinsky Decl. ¶ 14. Plaintiffs sent a confirming

11 letter. Press Decl. Ex. 4. In spite of the fact that Plaintiffs agreed to stipulate that the matter

12 could be heard on shortened time, and agreed to meet and confer in person immediately, the

13 Attorney General's office waited another 16 days to get their motion on file. Counsel for the

14 parties met and conferred in person on July 10, 2002. Wolinsky Decl. ¶ 16. At that time,

15 Plaintiffs explained their reasons for noticing the deposition. Wolinsky Decl. ¶ 16; Press Decl.

16 Ex. 4. Plaintiffs also reminded Defendants that it was their legal obligation to obtain a protective

17 order *prior* to the date on which the deposition was noticed, and that Plaintiffs would cooperate in

18 scheduling the motion to be heard on shortened time. Wolinsky Decl. ¶ 16, Press Decl. Ex. 4.

19 Nevertheless, Defendants waited another full week, until July 18, 2002, to file the

20 instant motion. Defendants clearly knew that, even on shortened time (which requires ten days

21 notice pursuant to LR 6-1(b)), their motion could not be heard prior to the July 29 deposition date.

22 Defendants' delay resulted in an abbreviated briefing schedule whereby Plaintiffs were given less

23 than a week to respond to Defendants' motion. Because the Court generously stayed discovery

24 pending a hearing on the motion, Defendants' delay also resulted in the cancellation of the

25 July 29 deposition date.[6]

---

[6] Otherwise, Defendants' conduct would have been sanctionable. "But unless *he has obtained* a court order that *postpones* or disposes with his duty to appear, that duty remains." *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257 (9th Cir. 1964) (emphasis added).

### III. ARGUMENT

#### A. The District Court Is Not Divested Of Jurisdiction During The Pendency Of Defendants' Interlocutory Appeal Of The Preliminary Injunction Order

This Court retains jurisdiction over the action, despite Defendants' interlocutory appeal to the Ninth Circuit. Defendants' argument that the District Court is divested of jurisdiction pending appeal is wrong as a matter of law. While it is generally true that the filing of a notice of appeal "divests the district court of control over those aspects of the case involved in the appeal" (*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985)), this "rule of exclusive appellate jurisdiction is a creature of judicial prudence [and] . . . is not absolute." *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). Specifically, the district court is *not* divested of jurisdiction when the appeal is an interlocutory one. *Marrese,* 470 U.S. at 379.

In particular, *appeals of preliminary injunction orders are a specific exception to the general rule*. Appeals from orders granting or denying preliminary injunctions do *not* divest the district court of jurisdiction to continue to try the case on its merits. *Phelan v. Taitano,* 233 F.2d 117, 119 (9th Cir. 1956); *Railway Labor Executives Assoc. v. City of Galveston*, 898 F.2d 481, 481 (5th Cir. 1990); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995); *Sycuan Band of Mission Indians v. Roache*, 788 F. Supp. 1498, 1511 (S.D. Cal. 1992) (citing cases from numerous other courts). This exception makes sense. The reason for the general rule that the filing of an appeal divests the district court of jurisdiction is "to avoid the confusion and inefficiency that might result from two different courts deciding the same issue at the same time." *Sycuan*, 788 F. Supp. at 1511 (*citing Masalosalo*, 718 F.2d at 956). There is a specific exception for interlocutory appeals of preliminary injunction orders, because otherwise "delay and inefficiency would result if proceedings in the district court were stayed." *Sycuan*, 788 F. Supp. at 1511. Defendants completely fail to address this specific exception for appeals of preliminary injunctions, and instead contend falsely that "none of the exceptions to this general rule apply here." Defendants' MPA at 7.

There is no merit to Defendants' contention that because their appeal raises

1  "fundamental issues of ripeness, standing, and exhaustion of administrative remedies" the
2  interlocutory appeal somehow encompasses the entire case, so as to divest the district court of
3  jurisdiction. Presumably all appeals of preliminary injunctions raise the same issues that must be
4  considered by the district court in deciding to issue a permanent injunction, but the appeal of a
5  preliminary injunction does not divest the district court of jurisdiction to make its injunction
6  permanent while the interlocutory appeal is still pending. *See Sycuan*, 788 F. Supp. at 1511;
7  *Moltan*, 55 F.3d at 1174. Because a permanent injunction may only be granted after a trial on the
8  merits or summary judgment in plaintiff's favor (*Moltan*, 55 F. 3d at 1174), it is vital that
9  discovery continue during the pendency of an appeal of a preliminary injunction order.

10  Finally, it is clear that Defendants recognize that the district court continues to
11  have jurisdiction over the case. Defendants appeared at the status conference on June 7 and at
12  settlement conferences with Magistrate Judge Spero. Since that time, they have sent three letters
13  to Plaintiffs, insisting that Plaintiffs comply with the Court's order made at the conference.
14  Defendants do not explain why they believe the Court has jurisdiction over Plaintiffs, but not over
15  Defendants.

**B. Federal Rule of Civil Procedure 27(b) Does Not Apply To This Case Because Defendants Have Filed An Interlocutory Appeal, Not An Appeal From A Final Judgment**

18  Plaintiffs are not required to comply with the requirements of Federal Rule of Civil
19  Procedure 27(b) prior to issuing deposition notices. Rule 27(b) applies on its face only to appeals
20  of "judgments." No judgment has yet been entered in this case, and Defendants' appeal is of an
21  interlocutory order only. "Rule 27(b) is intended for use *after* entry of judgment. Rule 27(b) is
22  not available in a pending suit simply because an interlocutory ruling is on appeal." 6 Moore's
23  Federal Practice § 27.30[2](Matthew Bender 3d ed. 1997).

24  This is a logical reading of the rule. As discussed above, after an appeal of a
25  judgment, the district court is generally divested of jurisdiction. Therefore, depositions can be
26  taken after judgment and during appeal only upon a special showing that the deposition is needed
27  to perpetuate testimony that would otherwise be lost. Because the appeal of an interlocutory
28  order does not divest the district court of jurisdiction, and discovery continues as usual in such

cases, Rule 27(b) does not apply.

### C. Defendants Have Not Met Their Burden Of Showing Good Cause For A Protective Order

Parties requesting a protective order under Federal Rule of Civil Procedure 26(c) bear of "heavy burden" of demonstrating "good cause." *Blankenship v. Hearst Corp.*, 519 F. 2d 418, 429 (9th Cir. 1975). Here, Defendants have not shown that the deposition in question—or indeed, any discovery—will burden them in any way. Defendants' entire argument is apparently premised on the assumption that the Ninth Circuit may rule in their favor, such that the case will be dismissed and any discovery taken will have been a waste of time.

Such an argument does not satisfy Rule 26(c)'s "good cause" requirement. Indeed, a judge of this district has rejected a similar argument as "idle speculation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). In *Gray*, defendants sought a stay of discovery pending disposition of their motion to dismiss and plaintiff's motion for class certification. The court found that:

> Defendants have done no more than to argue in conclusory fashion that their motions to dismiss…will succeed . . .Such general arguments could be said to apply to any reasonably large civil litigation. . . . Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. Although it is conceivable that a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a 'fishing expedition' or for settlement value…this is not such a case.

*Id.* at 40. *See also United States v. County of Nassau*, 188 F.R.D. 187, 188 (E.D.N.Y. 1999) ("The court is in agreement with the [plaintiff's] argument that the mere filing of a dispositive motion—even one attacking the jurisdiction of the district court—does not warrant the issuance of a stay under Rule 26(c). There must be more.")

Here, Defendants' motion for a stay is worse than the "idle speculation" condemned in *Gray*. In that case, defendants had filed a motion to dismiss, which they believed the court might grant, thus obviating the need for further discovery. In this case, in contrast, the district court has already ruled adversely on Defendants' contentions. Following extensive

briefing and oral argument, Judge Breyer considered and rejected Defendants' contentions that Plaintiffs lack standing, that the case is not ripe, and that Plaintiffs were required to exhaust administrative remedies. Defendants' request that discovery be stayed pending the Ninth Circuit's decision is essentially a request that this Court review Judge Breyer's Preliminary Injunction Order, and stay discovery because there is a substantial chance that his decision will be reversed on appeal.[7]

Moreover, it is simply untrue that resolution of the Ninth Circuit appeal in Defendants' favor will end the case. In the unlikely event that the Ninth Circuit finds that the named plaintiffs are inadequate in some way, the normal course would be for Plaintiffs to be given leave to substitute new class representatives. *Manual For Complex Litigation Third* § 30.16 (West Publishing 1995). Similarly, a finding by the Ninth Circuit that the case was not ripe in February 2002 (one month before students had to sit for the Exit Exam) does not necessarily mean that the case is still not ripe for decision. And finally, the "requirement" that Plaintiffs exhaust administrative remedies—if there is any such requirement—is applicable only to Plaintiffs' claims under IDEA, and has no bearing on their claims under the ADA, the Rehabilitation Act, or the United States Constitution.

The only other "burden" Defendants argue is preposterous. Defendants make the incredible assertion that the deposition is burdensome because it is scheduled "mere weeks before the August 14, 2002 oral argument in the Ninth Circuit." Defendants' MPA at 9. This ignores the fact that the deposition was originally noted for July 17, 2002—almost a month prior to the scheduled oral argument. The deposition was delayed for two weeks at *Defendants' request*, so that they would have more time in which to seek a protective order from this Court. Plaintiffs have not in any way noticed the deposition in order to interfere with Defendants' preparation for oral argument. Indeed, at the time the deposition notice was sent, oral argument had not yet been

---

[7] The situation here is thus very different than the facts of the cases relied upon by Defendants, in which a stay of discovery was granted. In *Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60 (S.D. N.Y. 1993), for example, the class representative had died, and there was a question as to whether plaintiffs would substitute a new, adequate representative. The court held under those circumstances that it was appropriate to stay discovery until a new class representative had been added.

set. Moreover, there are at least three Deputy Attorney Generals, plus attorneys from the Department of Education, working on this case. It is a bit much to accept that all of them must work full time to prepare for the oral argument. The scheduled deposition will not in any way "divert the State from preparing for oral argument." Defendants' MPA at 9. The notion that Plaintiffs are attempting to prevent the Attorney General's office from properly preparing for oral argument by noticing a single deposition is hardly persuasive.

In contrast, staying discovery puts a heavy burden on Plaintiffs and would severely disadvantage children with disabilities. Plaintiffs have a specific need both for the particular deposition in question, and for the opportunity to continue to conduct discovery in general, particularly because Defendants continue to change their policies. As Defendants' recent about-face on the accommodations policy indicates, Plaintiffs must continue to monitor compliance with the Preliminary Injunction Order. Moreover, while the preliminary injunction is an important component of the relief Plaintiffs seek, the preliminary injunction does not provide all of that relief. Thus, Plaintiffs still need a speedy trial and a permanent injunction in order to secure full relief, and therefore need to continue to take discovery.

Additionally, Plaintiffs have an urgent need for information about Defendants' recent decision to redesignate spell-checkers and transcribers as prohibited "modifications" that invalidate CAHSEE scores. First, Plaintiffs believe that Defendants have misrepresented the true state of affairs to the Ninth Circuit, and need to obtain accurate information prior to the oral argument scheduled for August 14.[8] Second, the present situation puts students with disabilities in an untenable position—Defendants' contradictory regulations and policy statements make it impossible for students and their parents to make an informed decision about whether to use a spell-checker or transcriber on the Exam, and risk having their scores invalidated—or to forgo the needed accommodations, and risk failing the Exam. Plaintiffs need the information to assist parents and children make an informed decision about what accommodations to use during the

---

[8] Defendants' opening brief misleadingly lists as permitted accommodations "responses with mechanical or electronic assistance which only record the student's response; transcribers." Wolinsky Decl. Ex. H.

September administration of the Exam. Third, because of the importance of these accommodations to so many students with disabilities, Plaintiffs need the information in order to evaluate the possibility of seeking further interim relief from the Court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay discovery should be denied in its entirety. Defendants should be ordered to produce a corporate designee responsive to Plaintiff's June 12, 2002 deposition notice on August 7 or 8, 2002.

Dated: July 24, 2002

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:       /s/ *Eve H. Cervantez*
    Eve H. Cervantez

Elizabeth J. Cabraser (State Bar No. 083151)
Morris A. Ratner (State Bar No. 157554)
Eve H. Cervantez (State Bar No. 164709)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Sid Wolinsky (State Bar No. 33716)
Melissa W. Kasnitz (State Bar No. 162679)
Rhoda Benedetti (State Bar No. 192606)
DISABILITY RIGHTS ADVOCATES
449 15th Street, Suite 303
Oakland, CA 94612
Telephone: (510) 451-8644
Facsimile: (510) 451-8511

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 3 |
| | A. | The Court Issues Its Preliminary Injunction Order | 3 |
| | B. | Plaintiffs Compromise on Discovery | 4 |
| | C. | Plaintiffs Learn That Defendants Have Changed the Rules of the Game | 5 |
| | D. | Plaintiffs Request Discovery on Defendants' Policy Change | 6 |
| III. | ARGUMENT | | 8 |
| | A. | The District Court Is Not Divested Of Jurisdiction During The Pendency Of Defendants' Interlocutory Appeal Of The Preliminary Injunction Order | 8 |
| | B. | Federal Rule of Civil Procedure 27(b) Does Not Apply To This Case Because Defendants Have Filed An Interlocutory Appeal, Not An Appeal From A Final Judgment | 9 |
| | C. | Defendants Have Not Met Their Burden Of Showing Good Cause For A Protective Order | 10 |
| IV. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

**Page**

### CASES

*Blankenship v. Hearst Corp.*,
    519 F. 2d 418 (9th Cir. 1975) ............................................................................................. 10

*Diduck v. Kaszycki & Sons Contractors, Inc.*
    147 F.R.D. 60 (S.D. N.Y. 1993) ......................................................................................... 11

*Gray v. First Winthrop Corp.*
    133 F.R.D. 39  (N.D. Cal. 1990) ......................................................................................... 10

*Marrese v. American Academy of Orthopaedic Surgeons*
    470 U.S. 373 (1985) .............................................................................................................. 8

*Masalosalo v. Stonewall Ins. Co.*,
    718 F.2d 955 (9th Cir. 1983) ............................................................................................... 8

*Moltan Co. v. Eagle-Picher Indus., Inc.*
    55 F.3d 1171 (6th Cir. 1995) ............................................................................................ 8, 9

*Phelan v. Taitano*
    233 F.2d 117 (9th Cir. 1956) ........................................................................................... 2, 8

*Pioche Mines Consol., Inc. v. Dolman*
    333 F.2d 257 (9th Cir. 1964) ................................................................................................ 7

*Railway Labor Executives Assoc. v. City of Galveston*
    898 F.2d 481 (5th Cir. 1990) ................................................................................................ 8

*Sycuan Band of Mission Indians v. Roache*,
    788 F. Supp. 1498 (S.D. Cal. 1992) .................................................................................. 8, 9

*United States v. County of Nassau*
    188 F.R.D. 187 (E.D.N.Y. 1999) ........................................................................................ 10

### STATUTES

5 Cal. Code Regs. § 1217(b)(2)(A) ............................................................................................ 5

Fed.R.Civ.P. 26(c) ...................................................................................................................... 10

Fed.R.Civ.P. 27(b) ............................................................................................................ 2, 9, 10

Fed.R.Civ.P. 30(b)(6) .................................................................................................................. 6

### RULES

LR 6-1(b) ..................................................................................................................................... 7

### TREATISES

6 Moore's Federal Practice § 27.30[2](Matthew Bender 3d ed. 1997) ....................................... 9

*Manual For Complex Litigation Third* § 30.16 (West Publishing 1995) ................................. 11